UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

SAULT STE. MARIE TRIBE OF
CHIPPEWA INDIANS,

    Plaintiff,

v.                                    Case No. 2:09-CV-95

JAMES HAMILTON, CAROLYN        HON. GORDON J. QUIST
HAMILTON, BARBARA DENCKLAU,
ROGER DENCKLAU, TINA GARDNER,
BAY MOUNTAIN TRADERS, LLC, and
BMT ENTERPRISES, d/b/a BLACK
MOUNTAIN TRADERS, INC.,

    Defendants.
_____/

## OPINION

Plaintiff, the Sault Ste. Marie Tribe of Chippewa Indians (the "Tribe"), has sued Defendants, James Hamilton, Carolyn Hamilton, Bay Mountain Traders, LLC, and BMT Enterprises d/b/a Black Mountain Traders, Inc. (collectively the "Hamilton Defendants"); Barbara Dencklau and Roger Dencklau[1] (the "Dencklaus"); and Tina Gardner ("Gardner"), alleging that Defendants violated the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and committed fraud. More particularly, the Tribe alleges that Defendants engaged in a scheme whereby Gardner, the Tribe's Gift Shop Director, purchased merchandise from Defendants far in excess of what the Tribe's casino gift shops had the ability to sell and in violation of the Tribe's policies and procedures. The Tribe further alleges that the Dencklaus and the Hamilton Defendants paid Gardner

---

[1] Defendants Jamie, Kelly, and Neil Dencklau were previously dismissed by stipulation and order entered on August 6, 2009 (docket no. 30).

kickbacks on all merchandise purchased by the Tribe and provided Gardner all expense paid vacations to Minnesota and elsewhere as part of the fraudulent scheme.

The Dencklaus, the Hamilton Defendants, and Gardner have all filed separate counterclaims against the Tribe. In their counterclaim, the Dencklaus assert claims for violation of RICO, fraud, and defamation. The Hamilton Defendants assert claims for fraud and defamation. Finally, Gardner asserts claims against the Tribe for termination without just cause and in violation of her legitimate expectation of just cause employment and for defamation. In addition, the Hamilton Defendants and Gardner have filed crossclaims against the Dencklaus, and the Dencklaus have filed crossclaims against Gardner and the Hamilton Defendants.

Presently before the Court are the following motions: (1) the Tribe's motions to dismiss and/or for summary judgment on the counterclaims of Gardner, the Hamilton Defendants, and the Dencklaus; (2) the Dencklaus' motion to dismiss the crossclaims of Gardner and the Hamilton Defendants; and (3) the Dencklaus' motion for summary judgment on the Tribe's claims. For the reasons set forth below, the Court will: (1) grant the Tribe's motions with regard to the counterclaims by Gardner and the Hamilton Defendants; (2) defer ruling on the Tribe's motion regarding the Dencklaus' counterclaim pending completion of discovery relating to Tribe s waiver of sovereign immunity; (3) grant in part and deny in part the Dencklaus' motion to dismiss the crossclaims by Gardner and the Hamilton Defendants; and (4) deny the Dencklaus' motion for summary judgment on the Tribe's claims.

### *The Tribe's Motions*

The Tribe has filed Rule 12(b)(6) motions to dismiss Gardner's and the Hamilton Defendants' counterclaims, as well as a Rule 56 motion for summary judgment on the Dencklaus'

2

counterclaim.² In each motion, the Tribe asserts that the Defendants' counterclaims are barred by the Tribe's sovereign immunity.³

"Suits against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S. Ct. 905, 909 (1991). Tribal sovereign immunity deprives a court of subject matter jurisdiction. *See Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007). "There is a strong presumption against waiver of tribal sovereign immunity." *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001). A waiver of tribe's sovereign immunity, whether by Congressional action or by the tribe itself, cannot be implied, but must be unequivocally expressed. *See E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1304 (10th Cir. 2001) (quoting *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997)). Moreover, tribal sovereign immunity is not dependent upon the distinction between the governmental and commercial activities of a tribe. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006).

There is no dispute that the Tribe is a federally recognized tribe entitled to tribal sovereign immunity. (Compl. ¶ 7; Dencklaus' Answer ¶ 7; Hamilton Defs.' Answer ¶ 7; Gardner Countercl. ¶ 2.) Therefore, the Dencklaus, the Hamilton Defendants, and Gardner, as the parties asserting claims against the Tribe, have the burden of showing a waiver of tribal sovereign immunity. *See Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) ("[T]he party asserting jurisdiction bears the burden of proving that sovereign immunity has been waived."); *Ingrassia v. Chicken*

---

²Gardner and the Hamilton Defendants have not responded to the Tribe's motions.

³Because sovereign immunity serves as a bar to subject matter jurisdiction, the Tribe should have asserted this defense pursuant to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Nonetheless, the failure to use the proper procedural vehicle is not fatal to the Tribe's motions.

3

*Ranch Bingo & Casino*, No. CIV-F-09-1266 AWI SMS, 2009 WL 5030658, at *1 (E.D. Cal. Dec. 16, 2009) ("The plaintiff bears the burden of showing a waiver of tribal sovereign immunity.").

The Hamilton Defendants and Gardner, having failed to respond to the Tribe's motions to dismiss, have not met their burden of showing an unequivocal waiver. The Dencklaus, on the other hand, responded to the Tribe's motion. The Dencklaus concede that the Tribe may assert sovereign immunity as a defense to their counterclaims. They argue, however, that the Tribe's motion should be denied for two reasons. First, they note that as of the time they responded to the motion, the Hamilton Defendants had not provided their Rule 26 disclosures and no discovery had occurred with regard to the Tribe's governance or its charter documents, which might disclose a basis for waiver. Second, citing *Rosebud Sioux Tribe v. Val-U Construction Co.*, 50 F.3d 560 (8th Cir. 1995), they contend that the Court should deny the motion because courts have allowed counterclaims as a set-off even if in the absence of a waiver.

The Dencklaus' second argument lacks merit. The court in *Rosebud Sioux Tribe* held that the defendant could assert its contract-related claims against the tribe because the tribe had waived its immunity from such claims in the parties' contract. In contrast, the Dencklaus have not shown a waiver in this case. Moreover, while the *Rosebud Sioux Tribe* court did state that "[r]ecoupment is a defensive action that operates to diminish the plaintiff's recovery rather than to assert affirmative relief," *id.* at 562, the Dencklaus assert affirmative claims against the Tribe – for violation of RICO, fraud, and defamation – rather than a defensive claim of recoupment.

Turning to the Dencklaus' first argument, while the Court notes that sufficient time has passed since the Dencklaus filed their response to the Tribe's motion for the Dencklaus to obtain discovery on the waiver issue, the Court will allow the Dencklaus time to conduct discovery on this issue. The Tribe did not respond to the Dencklaus' request for discovery, and the Court determines

4

that a short period for discovery will not substantially delay the case. Therefore, the Court will grant the Dencklaus until March 1, 2010, to conduct discovery. The parties will also be permitted to file supplemental briefs, if warranted.

### *Dencklaus' Motion to Dismiss Crossclaims*

Gardner has filed a brief crossclaim against the Dencklaus for defamation, alleging that "Roger and Barbara Dencklau have published false and defamatory statements about Gardner orally and in writing." (Gardner Cross-cl. against Roger & Barbara Dencklau ¶ 2.). The Hamilton Defendants have filed a crossclaim against the Dencklaus alleging: (1) violation of RICO; (2) business and personal defamation; (3) breach of fiduciary duty; (4) fraud and misrepresentation; (5) tortious interference with an advantageous business relationship; and (6) replevin.

A. **Gardner's Crossclaim**

With regard to Gardner's crossclaim, the Dencklaus argue that Gardner's defamation claim fails because it is not alleged with the requisite specificity regarding the content of the alleged statement and the person or persons to whom the communication was made. In order to state a claim for defamation under Michigan law, a plaintiff must allege: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). *Kefgen v. Davidson*, 241 Mich. App. 611, 617, 617 N.W.2d 351, 356 (2000). Michigan courts require that a claim for defamation be pled with some degree of specificity:

> The essentials of a cause of action for libel or slander must be stated in the complaint, including allegations as to the particular defamatory words complained

> of, the connection with the defamatory words with the plaintiff where such words are not clear or are ambiguous, and the publication of the alleged defamatory words.

*Pursell v. Wolverine-Pentronix, Inc.*, 44 Mich. App. 416, 421, 205 N.W.2d 504, 507 (1973) (quoting 11 Callaghan's Mich. Pleading & Practice (2d ed.) § 78.09). In other words, a plaintiff must "allege where, when, [and] to whom th[e] statement was published." *Hernden v. Consumers Power Co.*, 72 Mich. App. 349, 356, 249 N.W.2d 419, 422 (1976). While the precise words used need not be alleged, a plaintiff must at least allege the substance of the defamatory statement. *Pursell*, 44 Mich. App. at 422, 205 N.W.2d at 507.

Gardner fails to allege a claim for defamation with the requisite specificity. As noted above, she merely claims that the Dencklaus published false and defamatory statements about her to someone. Gardner does not allege the substance of the alleged statements, nor does she allege when they were made or to whom they were made. Gardner has not requested leave to amend her claim. Therefore, her crossclaim for defamation must be dismissed.

### B. The Hamilton Defendants' Crossclaim

The Dencklaus assert several grounds for dismissal of the Hamilton Defendants' crossclaim. The Dencklaus argue that the crossclaim is improper under Rule 13(g) and that it is subject to dismissal under the first-to-file rule because it concerns issues asserted in a lawsuit the Dencklaus previously filed against some of the Hamilton Defendants and others in Minnesota state court. Finally, on the merits, the Dencklaus argue that: (1) the defamation claim should be dismissed because it is not pled with the requisite specificity; (2) the fraud claim should be dismissed because it is not pled with the particularity as required by Rule 9(b); and (3) that the breach of fiduciary claim should be dismissed because no facts are alleged giving rise to a fiduciary relationship under Minnesota law.

6

### 1. Rule 13(g)

Federal Rule of Civil Procedure 13(g) provides:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the crossclaimant.

Fed. R. Civ. P. 13(g). Because Rule 13(g) employs the same language – "arises out of the transaction or occurrence that is the subject of" – as Rule 13(a)(1)(A) for compulsory counterclaims, courts generally apply the same standards for dealing with both rules. *See United States v. Gilbert*, 478 F. Supp. 306, 312 n.9 (S.D.N.Y. 1979). The Sixth Circuit applies the "logical relationship" test in determining whether a claim is a compulsory counterclaim. *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991). Under that test, a court asks "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id.* (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S. Ct. 367 (1926)).

The Dencklaus argue that the Hamilton Defendants' crossclaims do not meet the Rule 13(g) standard because the Tribe's claims arise out of inappropriate dealings between its employee, Gardner, and others, while the Hamilton Defendants' crossclaims relate to separate transactions in Minnesota not involving the Tribe. The Court's review of the crossclaim reveals otherwise. For example, the RICO claim concerns the Dencklaus' relationship with Gardner and the Hamilton Defendants in the same transactions with the Tribe that are at issue in the Tribe's claims. Thus, in paragraph 26, the Hamilton Defendants allege that "the Dencklau's' [sic] reports of alleged fraud against the Hamilton Defendants and Defendant Tina Gardner was conducted by wire and/or mail

communications with an unknown member of the Plaintiff Sault Tribe as part of a scheme and artifice to conceal their fraud against Plaintiff." Similarly, the defamation, breach of fiduciary duty, and tortious interference claims all involve the transactions and relationships at issue in Tribe's claims. Likewise, the fraud and misrepresentation claim concerns Roger Dencklau's "dealings with the . . . Tribe" and "the relationship of the Hamilton businesses with the [] Tribe." Finally, although the connection between the Tribe's claims and the Hamilton Defendants' replevin claim is not as direct as the other claims, the Court nonetheless concludes that it has a logical relationship with the Tribe's claims because there are overlapping factual and legal issues, such as the Dencklaus' relationship with, and authority to act for, the Hamilton business entities and what the Dencklaus' knew about the alleged scheme involving Gardner. Thus, the Hamilton Defendants' crossclaim satisfies Rule 13(g)'s requirements because it is logically related to the Tribe's claims.

### 2. First-to-File Rule

The Dencklaus next argue that the Hamilton Defendants' crossclaim is barred by the first-to-file rule. The first-to-file rule embodies the well-established principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. M'Iver*, 9 Wheat. 532, 22 U.S. 532, 535 (1824). The Sixth Circuit has noted that the rule is "a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)). The instant case does not concern two cases pending in two different federal district courts. Rather, one case is pending in federal court and the other is pending in Minnesota state court. The first-to-file rule thus has no

application. *See Kaiser Found. Health Plan, Inc. v. Shelton*, No. 09-00309 JMS LEK, 2009 WL 3018704, at *6 (D. Haw. Sept. 17, 2009) (noting that the first-to-file "rule does not contemplate application as between a state court and a federal court" but rather "is applicable as between two federal district courts"); *Tarragon Corp. v. Northland Portfolio, L.P.* (*In re Tarragon Corp.*), No. 09-10555 (DHS), 2009 WL 2244598, at *8 (Bankr. D.N.J. July 27, 2009) (stating that the first-to-file doctrine does not apply when similar actions are pending in state and federal courts).

### 3. Defamation Claim

The Dencklaus argue that the Hamilton Defendants' defamation claim pled in Count II of the counterclaim must be dismissed because it lacks the requisite specificity as required by Michigan law. The Court agrees. Although the Hamilton Defendants provide a bit more detail in their defamation claim than Gardner provided in her claim, much of the necessary details are still lacking. For instance, although the Hamilton Defendants allege that Roger Dencklau made false accusations that Defendant Carolyn Hamilton engaged in fraudulent dealings with the Tribe, they do not allege when or to whom Roger Dencklau made the alleged statements. As set forth above, Michigan law requires more than bare bones allegations in order to adequately allege a claim for defamation. In addition, the Hamilton Defendants have not requested leave to amend this claim. Therefore, the Court will dismiss the defamation claim.

### 4. Fraud and Misrepresentation Claim

The Dencklaus argue that the fraud and misrepresentation claim must be dismissed because it is not pled with particularity. Pursuant to Rule 9(b), a party claiming fraud "must state with particularity the circumstances constituting fraud," although "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Sixth Circuit interprets Rule 9(b) as requiring a plaintiff to "allege the time, place, and content of the alleged

9

misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993). In other words, a party alleging fraud must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana*, 547 F.3d 564, 569-70 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)).

The pertinent allegations of the fraud claim are contained in the following paragraphs:

42. Throughout the course of dealing with the Hamilton Defendants, Roger Dencklau engaged in a pattern of deception and fraud as to the accounts of the Hamilton businesses, the sales and assets of the business, as well as committing fraud in his dealings with the Plaintiff Sault Tribe.

43. At all specific times pertinent to Plaintiff's Complaint, Roger Dencklau misrepresented the relationship of the Hamilton businesses with the Sault Tribe and concealed facts from Carolyn Hamilton as when sums were being paid by customers, including amounts from the Plaintiff Tribe.

Construed liberally, these allegations suggest that Roger Dencklau acted fraudulently in connection with the accounts of the Hamilton businesses. However, the Hamilton Defendants do not allege that Roger Dencklau actually made a statement to them, nor do they allege when and where one or more fraudulent statements were made. Moreover, they fail to allege why a statement Roger Dencklau made was fraudulent. In short, the Hamilton Defendant's fraud allegations fall short of compliance with Rule 9(b). As with the defamation claim, the Hamilton Defendants have not sought leave to amend this claim. Accordingly, the fraud and misrepresentation claim will also be dismissed.

### 5. Breach of Fiduciary Duty Claim

The Dencklaus' final argument is that the Hamilton Defendants fail to allege a claim for breach of fiduciary duty because "no basis for such a duty has been established under Minnesota law." (Dencklau Br. Supp. Mot. at 8.) The Dencklaus fail to further develop this argument or to cite

any Minnesota case law that supports their position. Accordingly, the Court declines to flesh out the argument for the Dencklaus. *See Rice v. Commissioner*, 169 F. App'x 452, 454 (6th Cir. 2006) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)).

### *Dencklaus' Motion for Summary Judgment*

The Dencklaus contend that they are entitled to summary judgment on the Tribe's claims based upon an agreement by the Tribe's attorney to not use any information provided by Roger Dencklau against him or his family. The Dencklaus contend that the Tribe broke this promise to Roger Dencklau by including the Dencklaus in the instant lawsuit, which is based almost entirely upon the information Roger Dencklau provided to the Tribe's attorney.

According to the Dencklaus, after their business relationship with Carolyn Hamilton soured, Carolyn Hamilton and Gardner sent out a fax to other Native American casinos that defamed the Dencklaus. (Dencklau Aff. ¶ 4.) After Roger Dencklau became aware of the defamatory fax signed by Gardner, he spoke with the Tribe's attorney. (*Id.* ¶ 5.) During that conversation, Roger Dencklau told the Tribe's attorney that Dencklau possessed some information regarding Hamilton and Gardner that might be of interest to the Tribe. (*Id.*) In response to the discussion, the Tribe's attorney sent Roger Dencklau an email, which forms the basis of the allege contract. In the email the Tribe's attorney requested a statement from Roger Dencklau regarding the cash payments made to Gardner, subject to the following promise:

> I would like to assure yoou [sic] that nothing you write will be used against you or anyone in your family in any court proceedings, the sole purpose that your statement will be used for is the administrative proceedings. I will not use the written statement against you, and I will not supply it to any law enforcement personnel for them to use against you. I am giving you my word, and a promise.

11

(9/16/08 email from Kachur to Dencklau, Dencklau Aff. Ex. 1.) In response, Roger Dencklau provided a two-page letter describing, among other things, the practice by which Gardner was paid a ten percent payment on every invoice paid by the Tribe as well as the method Gardner and Carolyn Hamilton had devised to divide sales into multiple invoices in order to avoid the $1,000 limitation on Gardner's purchasing authority.

The Dencklaus contend that by filing the instant case and naming the Dencklaus as Defendants, the Tribe breached the contract with Roger Dencklau, requiring that the claims against the Dencklaus be dismissed.

Michigan law provides that contracts should be construed to give effect to the intentions of the parties and to give a reasonable meaning to all provisions. *Klever v. Klever*, 333 Mich. 179, 186, 52 N.W. 2d 653, 656-57 (1952). If the language of the contract is clear and unambiguous, the court should construe it according to its plain sense and meaning. *Grosse Point Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005). A contract is ambiguous if its provisions are capable of conflicting interpretations. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467, 663 N.W.2d 447, 453 (2003).

The contract at issue in this case was what is commonly labeled a unilateral contract. Such a contract is formed where one party makes an offer that seeks acceptance by performance and the other party accepts by performing. *See In re Certified Question*, 432 Mich. 438, 446, 443 N.W.2d 112, 115-16 (1989). In this case the Tribe's attorney sought Roger Dencklau's acceptance through submission of a written statement describing the payments made to Gardner. Roger Dencklau accepted the offer by providing a written statement, thus forming a contract.

The Tribe contends that no contract was formed because there was no mutuality of agreement between the parties. The Tribe asserts that there was no meeting of the minds because

Roger Dencklau asserts that the Tribe's attorney's offer was not to sue the Dencklaus in a civil action in exchange for his written statement, whereas the email forming the basis of the contract states only that the Tribe would not use the written statement against Roger Dencklau or his family. This argument lacks merit, because the evidence shows that the parties understood what was required for acceptance. The issue is what was promised, and the answer to that question depends upon the language of the email from the Tribe's attorney, which constituted the offer.

The email does not state that the Tribe agreed not to sue the Dencklaus if Roger Dencklau provided a written statement. Rather, it merely states that "nothing you write will be used against you or anyone in your family in any court proceedings, the sole purpose that your statement will be used for is the administrative proceedings involving Ms. Gardner." In effect, the Tribe promised Roger Dencklau what is commonly known as "use immunity." Use immunity "acts only to suppress, in any . . . prosecution, the witness' testimony and evidence derived directly or indirectly from that testimony." *Application of United States Senate Select Comm. on Presidential Campaign Activities*, 361 F. Supp. 1270, 1274 (D.D.C. 1973). The other type of immunity, known as "transaction immunity," is broader in scope. Transaction immunity "precludes prosecution for any transaction or affair about which a witness testifies." *Id.* In this case, the plain language of the email shows that the Tribe's attorney promised that it would not use Roger Dencklaus written statement against him, which constitutes use immunity. Thus, the Tribe did not necessarily breach the agreement by filing this case against the Dencklaus, although the Tribe may not use Roger Dencklau's statement, or any evidence derived directly or indirectly from that statement, against the Dencklaus in this case. Whether the Tribe can produce any evidence that does not derive from the information provided by Roger Dencklau's statement remains to be seen. *See United States v. Hubbell*, 530 U.S. 27, 39-40, 120 S. Ct. 2037, 2045 (2008) (noting that when use immunity is

granted under 18 U.S.C. § 6002, the government has a duty "not merely to show that its evidence is not tainted by the prior testimony, but 'to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony'") (quoting *Kastigar v. United States*, 406 U.S. 441, 460, 92 S. Ct. 1653, 1665 (1972)). Although summary judgment will be denied at this time, the Court will allow the Dencklaus sixty days to conduct discovery from the Tribe to determine whether the Tribe has any admissible evidence against either of the Dencklaus that is derived independently of Roger Dencklau's statement, following which the Dencklaus may renew their motion for summary judgment, if warranted.

## CONCLUSION

For the foregoing reasons, the Court will: (1) grant the Tribe's motions to dismiss Gardner's and the Hamilton Defendants' counterclaims; (2) defer ruling on the Tribe's motion for summary judgment on the Dencklaus' counterclaim pending the completing of discovery on the issue of wavier of sovereign immunity; (3) grant in part and deny in part the Dencklaus' motion to dismiss crossclaims; and (4) deny the Dencklaus' motion for summary judgment on the Tribe's claims; (5) grant the Dencklaus sixty days to conduct discovery of the Tribe to determine whether it has evidence independent of Roger Dencklau's statement and to renew their motion for summary judgment, if warranted.

An Order consistent with this Opinion will be entered.


Dated: January 20, 2010            /s/ Gordon J. Quist
                                   GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE